GRIMES, Acting Chief Judge,
dissenting.
I believe the trial court erred in granting appellee, Kenneth K. Nyman, a summary judgment on appellant, Eastridge Corporation’s amended third party complaint.
When viewed in the light most favorable to Eastridge, the pleadings and depositions on file at the time of the motion for summary judgment disclose the following facts. During a conversation with Mr. Nyman, an insurance agent doing business as Southeast Insurors, Robert Prine, president of East-ridge, expressed a desire to obtain a bonda-ble contractor to do work on a development which Eastridge was planning. Nyman suggested Witham & Sons Corporation and pointed out that he already had written some performance bonds on that company. As a result of this conversation, Nyman introduced Mr. Prine to Ralph Witham, president of Witham & Sons.
Subsequently, Eastridge decided to use Witham on its project, and Mr. Nyman contacted an insurance company in order to obtain a performance bond. The insurance company advised Nyman that he first had to submit a new audited financial statement and schedule for work in progress for Witham. When it came time for Eastridge to sign a contract with Witham, the bond had not yet been issued. Eastridge then asked Nyman for assurances that the bond would be forthcoming so that it could sign the contract with Witham and proceed with the project. On October 25, 1978, Nyman responded with a letter to Mr. Prine which read as follows:
We are the bonding agency for Witham & Sons Corporation. This letter is to assure you that we will provide a performance bond for the above named subdivision — principal: Witham & Sons Corporation; Obligee: Eastridge Corporation.
I hope this letter will alleviate your time problem while we are reviewing the necessary information to furnish the performance bond.
Relying on this letter, Eastridge entered into a contract with Witham which contemplated that the premium for the bond would be within the contract price.
Despite his letter to Mr. Prine, Mr. Ny-man continued to encounter delays in obtaining the bond, not only because he could not get proper financial data from Witham, but also because he found that a lien had been filed on another project involving Wit-ham. Eastridge made repeated inquiries concerning the status of the bond, but Ny-man did not inform the company of these problems. In fact, he continued to give Eastridge assurances that the bond would be forthcoming. However, he never did obtain a bond, and on February 12, 1979, Witham advised him that a bond was no longer needed. In the meantime, Witham did not meet the project deadlines and walked off the job on February 12. When Eastridge withheld some of Witham’s payments, Witham sued Eastridge for the balance of the contract price. Eastridge counterclaimed against Witham and filed a third party complaint seeking to hold Nyman responsible for the damages suffered by reason of Witham’s failure to perform the contract.
Many of the facts stated above are in dispute. However, assuming their veracity I am convinced that they provide a basis for a legally sufficient claim against Nyman. A performance bond, such as the one which Eastridge sought here, is in the nature of a contract of insurance. Tapping v. McIntosh, 104 Fla. 715, 140 So. 773 (1932); 13 R. Anderson, Cyclopedia of Insurance Law § 47:5 (2d ed. 1965). Thus, in deciding whether Eastridge, as the one who would have been insured by the bond, had a cause of action against Nyman, it is appropriate to look at insurance law to determine the duties owed by an insurance agent to an insured. In the case of deMarlor v. Foley *379 Carter Insurance Co., 386 So.2d 22, 23 (Fla. 2d DCA 1980), this court held that:
An insurance agent or broker who agrees or undertakes to procure certain insurance coverage owes his principal a duty to do so within a reasonable time. If, through his own fault or neglect, he fails to do so, he may become liable for any resulting damages. Even when he is not to blame for the failure to obtain coverage the agent may nevertheless become liable for damages if he fails to inform his principal that the requested insurance has not been procured. Cat ’n Fiddle, Inc. v. Century Insurance Co., 200 So.2d 208 (Fla. 3d DCA 1967).
This appears to be the general rule throughout the country. Annot., 64 A.L. R.3d 398, 410-15 (1975); 3 R. Anderson, supra, § 25:47 (1960).
Applying these principles to the circumstances of this case, it may be that a jury would not find a breach of duty on the part of Mr. Nyman. On the other hand, the October 25 letter was so affirmatively written that in many respects it resembled a guarantee to furnish the bond. Thus, at the very least, Nyman had an obligation either to promptly obtain the bond or to notify Eastridge within a reasonable time that he could not do so, and a jury of reasonable persons could conclude that he failed to carry out this obligation. After all, Eastridge’s contract with Witham called for completion of the project within 140 days, and 110 days had already passed before it became evident, once and for all, that a bond would not be furnished. The fact that Nyman was the bonding agent for Witham would not change this result because Eastridge was to be the obligee under the bond and Nyman made direct assurances to Eastridge with the knowledge that Eastridge would rely on them.
In view of the foregoing, I would reverse the summary judgment in favor of Nyman and remand the claim for trial.